UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMELIA BYRNES BRAZIL,<br><br>Plaintiff,<br><br>v.<br><br>OFFICE OF PERSONNEL<br>MANAGEMENT,<br><br>Defendant. | Case No. 12-cv-02898-WHO<br><br>**ORDER ON CROSS-MOTIONS FOR**<br>**SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 48 |

## INTRODUCTION

Plaintiff Amelia Byrnes Brazil received medically necessary mental health treatment at a residential facility.  Her federal health insurance plan denied coverage because the plan excluded coverage for residential treatment centers, and so she is seeking redress here.  Both California and the United States have passed mental health parity laws requiring that treatment limitations for mental health benefits are no more restrictive than those for medical and surgical benefits, but federal law excludes federal insurance plans from their scope.  The question I must decide is whether Brazil can overcome defendant Office of Personnel Management's ("OPM") assertions of sovereign immunity and preemption in order to address the merits of her claim.  Because federal law does not allow the relief Brazil seeks, her motion for summary judgment is DENIED and OPM's motion for summary judgment is GRANTED.

## FACTUAL BACKGROUND

At all times relevant in this matter, Brazil was enrolled in the Federal Employees Health Benefits Program's Blue Cross and Blue Shield Service Benefit Plan (the "Plan").  OPM0002; Opp'n (Dkt. No. 51) 2.  The Plan is administered in California by Blue Shield of California ("BSC").  It is "fee for service . . . with a preferred provider organization" and is "[s]ponsored and

1   administered by:  The Blue Cross and Blue Shield Association and participating Blue Cross and

2   Blue Shield Plans."  OPM 0048.  The "[m]ental health and substance abuse benefits" do not

3   include "[s]ervices performed or billed by . . . residential treatment centers."  OPM0138,

4   OPM0140.

5       On August 5, 2011, Brazil was hospitalized for 15 days at the Lucille Packard Children's

6   Hospital for anorexia nervosa.  OPM0013-14.  All the physicians involved in Brazil's care agreed

7   that she needed residential treatment.  OPM0014.  While the hospitalization addressed "the most

8   immediate physical threats" to Brazil, it did not address "the underlying causes."  OPM0014.

9   Brazil's father wrote to BSC that "without sustained and sophisticated treatment in a residential

10  facility, those underlying causes would remain completely unaddressed," and Brazil "would

11  continue to suffer anorexia nervosa indefinitely, likely necessitating additional hospitalizations

12  and multiple calls on other health care providers."  OPM0014.  The physicians and Brazil's

13  therapist, in consultation with her father, identified Monte Nido Vista Residential Center, in

14  Agoura Hills, California, as the residential treatment program that best fits Brazil's medical needs

15  and psychiatric circumstances.  OPM0014.

16      Brazil entered Monte Nido Vista on August 23, 2011.  OPM0015.  On the same day, Brazil

17  requested pre-certification from BSC for admission to Monte Nido Vista.  OPM0002.  BSC denied

18  the request and told Brazil's father that his policy provided no benefits for residential treatment.

19  OPM0015; OPM0022.  Brazil's father contacted BSC to appeal the denial and "explained that the

20  residential treatment at Monte Nido was a medical necessity," but the BSC representative told him

21  "that there was nothing to appeal and no point in purporting to initiate an appeal process – because

22  the policy simply provided no benefit for residential treatment for this condition."  OPM0015.

23  BSC therefore denied the request.

24      On August 29, 2011, Brazil's father submitted to BSC a claim for reimbursement for

25  expenses he had and was going to incur for services being rendered to Brazil.  OPM0013-16.

26  Brazil's father cited a decision by the United States Court of Appeals for the Ninth Circuit,

27  *Harlick v. Blue Shield of California*, 656 F.3d 832 (9th Cir. 2011), *withdrawn and superseded on*

28  *denial of reh'g en banc*, 686 F.3d 699 (9th Cir. 2012), which he argued held that BSC was

2

obligated to pay for treatment in a virtually identical case. OPM0016. On September 1, 2011, BSC again denied coverage, citing the Plan brochure as stating that services provided by "residential treatment centers" are not covered. OPM0020.

On September 1, 2011, Brazil's father responded to BSC, asking why it was not bound by *Harlick*. OPM0010. On September 28, 2011, BSC responded, stating that "Title 5 United States Code section 8902(m)(1) states that Plans participating with the FEHBP (Federal Employee Health Benefit Program) are exempt from regulation by state and local statute." OPM0008. BSC also informed Brazil that she may ask OPM to review the claim dispute and explained the process for doing so. OPM0007-08.

On October 11, 2011, Brazil's father filed an appeal on her behalf to OPM. OPM0027. On November 3, 2011, OPM affirmed BSC's denial of the claim, asserting that the Plan explicitly does not cover services performed by residential treatment centers or their staff. OPM0026. OPM stated that "we are not disputing that your daughter needed this service for her medical condition," but that the Plan did not cover the service. OPM0025-26. The letter also stated that "you do retain the right to file suit against the Office of Personnel Management in Federal court." OPM0026.

## PROCEDURAL BACKGROUND

On November 3, 2011, OPM informed Brazil that she exhausted the administrative remedies for appealing the denial of benefits. OPM0026. On June 4, 2012, Brazil filed this action. Dkt. No. 1. The First Amended Complaint ("FAC") seeks (1) damages "in a specific sum to be proved at trial . . . a sum that exceeds "$100,000" for violation of the Federal Employees Health Benefits Act of 1959, 5 U.S.C. §§ 8901 *et seq.*; (2) a declaration that the Plan violates California's Mental Health Parity Act, CAL. HEALTH & SAFETY CODE § 1374.72, CAL INS. CODE § 10144.5; and (3) a declaration that the Plan violates the federal Mental Health Parity and Addiction Equity Act, 42 U.S.C. § 300gg-26, 29 U.S.C. § 1185a. In addition, the FAC seeks "an Order enjoining the Plan and the Defendant from continuing to incorporate into the insurance policies they provide or authorize any blanket exclusion of coverage for medically necessary residential treatment for anorexia nervosa." The FAC also seeks attorney's fees under the Equal

United States District Court
Northern District of California

3

Access to Justice Act, 28 U.S.C. § 2412, and costs.

Brazil filed this motion for summary judgment on November 18, 2013, Dkt. No. 48.[1] OPM responded and made a cross-motion for summary judgment.  Dkt. No. 51.  A hearing was held on January 8, 2014.  Dkt. No. 58.

**LEGAL STANDARD**

**I.      SUMMARY JUDGMENT**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial.  The moving party need only demonstrate to the court "that there is an absence of evidence to support the non[-]moving party's case."  *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "designate specific facts showing a genuine issue for trial."  *Id.* at 324 (quotation marks omitted). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor.  *Id.* at 255.

**II.     SUBJECT MATTER JURISDICTION AND SOVEREIGN IMMUNITY**

"Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute . . . ."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  A federal court must always have subject matter jurisdiction to hear a case.  The burden of

---

[1] Simultaneously, BSC moved to file a brief as amicus curiae.  Dkt. No. 52.  The motion for leave to file the brief is GRANTED.

United States District Court
Northern District of California

establishing jurisdiction rests on the party asserting it.  *Id.*

Sovereign immunity and subject matter jurisdiction have a "murky" and "confusing relationship."  *Powelson v. U.S., By & Through Sec'y of Treasury*, 150 F.3d 1103, 1104 n.1 (9th Cir. 1998).  Sovereign immunity is "a defense to an action against the United States"; it is also a "jurisdictional bar."  *Id.* (citation omitted).  "Sovereign immunity is grounds for dismissal independent of subject matter jurisdiction."  *Id.*  Accordingly, "[i]n an action against the United States, in addition to statutory authority granting subject matter jurisdiction, there must be a waiver of sovereign immunity."  *Arford v. United States*, 934 F.2d 229, 231 (9th Cir. 1991).  "A statute may create subject matter jurisdiction yet not waive sovereign immunity."  *Powelson*, 150 F.3d at 1105.

## DISCUSSION

## I.     BACKGROUND ON FEHBA

The Federal Employees Health Benefits Act of 1959 ("FEHBA"), 5 U.S.C. § 8901 *et seq.*, "establishes a comprehensive program of health insurance for federal employees."  *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 682 (2006) ("*Empire II*").  The Act authorizes OPM to contract with private insurers to offer healthcare plans to federal employees and their families.  *Id.* (citing 5 U.S.C. § 8902(a)).  An enrollee in a plan under FEHBA can challenge the denial of benefits in federal court by suing OPM under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, for an order requiring OPM to invoke its contractual right to direct the carrier to pay the claim.  5 C.F.R. § 890.107(c).  "A covered individual must exhaust both the carrier and OPM review processes . . . before seeking judicial review of the denied claim."  5 C.F.R. § 890.105(a)(1).

## II.    SUBJECT MATTER JURISDICTION

OPM argues that I lack subject matter jurisdiction to hear this case.  Opp'n 7.  OPM points out that while Brazil asserts jurisdiction based on "a federal question as set forth in 5 U.S.C. § 8912," FAC ¶ 1, which grants district courts jurisdiction over claims "founded on" FEHBA, "the FAC does not allege any claim 'founded on' the Federal Employees Health Benefits Act."  Opp'n 7 (quoting 5 U.S.C. § 8912).  Despite the fact that the first cause of action is titled

United States District Court
Northern District of California

1    "VIOLATION OF THE FEHBA," the FAC does not allege that OPM violated FEHBA in any

2    way; rather, the other two causes of action only allege violations of California's Mental Health

3    Parity Act and the federal Mental Health Parity and Addiction Equity Act.  Since Section 8912

4    does not establish subject matter jurisdiction here, OPM says that I lack jurisdiction.  Opp'n 7.

5    Brazil did not respond to this argument.

6           The Ninth Circuit has said that "there is subject matter jurisdiction over federal-law claims

7    unless they are 'obviously frivolous.'"  *Cook Inlet Region, Inc. v. Rude*, 690 F.3d 1127, 1131 (9th

8    Cir. 2012) (citation omitted).  "It is hard to show frivolousness.  There is federal question

9    jurisdiction unless the federal claim is 'so insubstantial, implausible, foreclosed by prior decisions

10   of the Supreme Court, or otherwise completely devoid of merit as not to involve a federal

11   controversy.'"  *Id.* (citation and brackets omitted).  "Any non-frivolous assertion of a federal claim

12   suffices to establish federal question jurisdiction, even if that claim is later dismissed on the

13   merits."  *Id.*

14          I have subject matter jurisdiction over this case.[2]  As indicated in the FAC's caption, Brazil

15   asserts a "violation of Federal Employees Health Benefits Act of 1959 (FEHBA) [5 U.S.C. § 8901

16   *et seq.*]."  FAC 1 (original brackets).  While OPM complains that "the FAC does not allege that

17   OPM did anything that FEHBA forbids or failed to do anything that FEHBA requires," that is an

18   issue that goes to adequacy of pleading, not subject matter jurisdiction.  However inartfully

19   pleaded, at bottom Brazil is challenging the action of a federal agency.  *See Empire II*, 547 U.S. at

20   700 (holding that subject matter jurisdiction was lacking and distinguishing case from one in

21   which "the reimbursement claim was triggered . . . by the action of [a] federal department, agency,

22   or service").  Brazil undoubtedly asserts a claim under federal law, and it is not "frivolous,"

23   "insubstantial, implausible, foreclosed by prior decisions of the Supreme Court, or otherwise

24   completely devoid of merit."  *Cook Inlet Region*, 690 F.3d at 1131.

25

26

27   ---
     [2] Courts, including the Ninth Circuit, have held that jurisdictional issues are not properly decided
     on a motion for summary judgment.  *O'Donnell v. Wien Air Alaska, Inc.*, 551 F.2d 1141, 1145 n.4
28   (9th Cir. 1977); *Jones v. Brush*, 143 F.2d 733 (9th Cir. 1944); CHARLES ALAN WRIGHT ET AL., 5B
     FEDERAL PRACTICE AND PROCEDURE § 1350 (3d ed. 1998).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### III.     FIRST CAUSE OF ACTION FOR VIOLATION OF FEHBA

OPM argues that I lack jurisdiction to grant Brazil's requested relief for the First Cause of Action because there is no waiver of sovereign immunity and, as a federal agency, OPM may only be sued if Congress unequivocally waives sovereign immunity.  The only relief Brazil may seek because there *is* a waiver of sovereign immunity is "an order directing OPM to invoke its contractual right to direct the carrier to pay the claim."  Opp'n 1.  However, "the FAC seeks money damages and declaratory relief for the alleged violation of two mental health parity laws that do not apply to the Federal Employees Health Benefits Plan at issue."  Opp'n 1.

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."  *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994).  "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for [a federal court's] jurisdiction."  *United States v. Mitchell*, 463 U.S. 206, 212 (1983).  "Waivers of the Government's sovereign immunity, to be effective, must be unequivocally expressed."  *United States v. Nordic Vill. Inc.*, 503 U.S. 30, 33 (1992) (quotation marks omitted); *see also Fed. Aviation Admin. v. Cooper*, 132 S. Ct. 1441, 1448 (2012) (quotation marks omitted).

Sovereign immunity would bar Brazil's claims for relief as pleaded because the FAC seeks relief from the OPM beyond FEHBA's limited waiver of sovereign immunity.  *Bryan v. Office of Pers. Mgmt.*, 165 F.3d 1315, 1319 (10th Cir. 1999) ("Because the government has not consented to monetary judgments in [FEHBA] disputes, the district court correctly dismissed [the plaintiff's] suit for lack of jurisdiction.").  An action against the OPM challenging a denial of benefits is "limited to a court order directing OPM to require the carrier to pay the amount of benefits in dispute."  5 C.F.R. § 890.107; *Botsford v. Blue Cross & Blue Shield of Mont., Inc.*, 314 F.3d 390, 397 (9th Cir. 2002), *opinion amended on denial of reh'g*, 319 F.3d 1078 (9th Cir. 2003); *Pellicano v. Blue Cross Blue Shield Ass'n*, No. 11-cv-406, 2012 WL 1828027, at *5 & n.5 (M.D. Pa. May 18, 2012), *aff'd*, 540 Fed. App'x 95 (3d Cir. 2013); *Scholl v. QualMed, Inc.*, 103 F. Supp. 2d 850, 854 (E.D. Pa. 2000); *Rievley ex rel. Rievley v. Blue Cross Blue Shield of Tenn.*, 69 F. Supp. 2d 1028, 1035 (E.D. Tenn. 1999).  Here, Brazil seeks damages, "an Order enjoining the Plan and the Defendant from continuing to incorporate into the insurance policies they provide or authorize any

1    blanket exclusion of coverage for medically necessary residential treatment for anorexia nervosa,"

2    declaratory relief, attorney's fees, and costs.  But "the government has not consented to monetary

3    judgments in [FEHBA] disputes."  *Bryan*, 165 F.3d at 1319.  The APA, which governs judicial

4    review of agency actions and provides a limited waiver of sovereign immunity, also does not

5    provide for money damages.  *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 929 (9th

6    Cir. 2009); 5 U.S.C. § 702 (providing only "relief other than money damages"); *Hill v. United*

7    *States*, 571 F.2d 1098, 1102 n.7 (9th Cir. 1978) ("5 U.S.C. [§] 702 [ ] simply waives sovereign

8    immunity as to all non-monetary claims against government agencies, officers, or employees

9    covered by the Administrative Procedure Act"); *see also United States v. Testan*, 424 U.S. 392,

10   400 (1976) ("In a suit against the United States, there cannot be a right to money damages without

11   a waiver of sovereign immunity.").  Nor does FEHBA allow the equitable relief sought or

12   attorney's fees and costs.

13       That said, it is apparent from the FAC that, despite how it is worded, what Brazil really

14   wants is for BSC to pay the amount of benefits in dispute.  OPM does not disagree that there is a

15   limited waiver of sovereign immunity that would allow me to order OPM to direct the carrier to do

16   so if the complaint properly requested it.  *See* Opp'n 6.  Brazil asked at the hearing to be allowed

17   to amend the FAC to clarify the remedy she seeks.  *See* Tr. (Dkt. No. 63) 16:7-21.  I would grant

18   the request if it was not futile.  However, there is no dispute that the Plan, as written, excludes the

19   coverage Brazil seeks.  And for the reasons stated in my discussion of the other causes of action,

20   neither the California nor federal mental health parity acts provide a legal basis for Brazil's claims.

21   For that reason, Brazil's oral motion to amend is DENIED.

22   **IV.    SECOND CAUSE OF ACTION FOR DECLARATORY RELIEF THAT THE PLAN**

23   **VIOLATES CALIFORNIA'S MENTAL HEALTH PARITY ACT**

24       **A.  The Cause of Action Is Barred By Sovereign Immunity.**

25       OPM argues that I lack jurisdiction over the second cause of action because there is no

26   waiver of sovereign immunity over these claims related to the California Mental Health Parity

27   Act.  Opp'n 7.  Regardless of whether OPM is bound by the California law, which OPM argues it

28   is not, "Congress has not consented to be sued under the California Mental Health Parity Act."

United States District Court
Northern District of California

8

United States District Court
Northern District of California

1    Opp'n 8.  Furthermore, the Declaratory Judgment Act is not a waiver of sovereign immunity.

2    Surreply (Dkt. No. 57) 4.

3        I agree.  Brazil does not point to any explicit waiver by Congress allowing OPM to be sued

4    for purported violations of California's Mental Health Parity Act.  "Although the instant [cause of]

5    action is [ ] premised on the Declaratory Judgment Act, 28 U.S.C. § 2201, that statute plainly does

6    not operate as an express waiver of sovereign immunity."  *Muirhead v. Mecham*, 427 F.3d 14, 18

7    (1st Cir. 2005); *see also Balistrieri v. United States*, 303 F.2d 617, 619 (7th Cir. 1962) ("It is

8    axiomatic that a suit cannot be maintained against the United States without its consent.  The

9    passage of the Declaratory Judgment Act did not give such consent.") (citation omitted); *Walton v.*

10   *Fed. Bureau of Prisons*, 533 F. Supp. 2d 107, 114 (D.D.C. 2008) (holding that Declaratory

11   Judgment Act does not "waive[ ] the federal government's sovereign immunity").  Accordingly, I

12   lack jurisdiction to adjudicate this claim.

13       Brazil argues that "[t]here a[re] numerous cases in which plaintiffs have sought declaratory

14   relief in FEHBA cases."[3]  Reply (Dkt. No. 57) 5-6.  In support of her argument, Brazil cites

15   *Nesseim v. Mail Handlers Benefit Plan*, 995 F.2d 804 (9th Cir. 1993), *Hayes v. Prudential Ins. Co.*

16   *of Am.*, 819 F.2d 921 (9th Cir. 1987), and *Bridges v. Blue Cross & Blue Shield Ass'n*, 935 F. Supp.

17   37 (D.D.C. 1996).  These cases are inapposite.  While the plaintiffs in *Nesseim* and *Hayes sought*

18   declaratory relief, the courts did not grant it.  Indeed, the courts never addressed the issue.  It does

19   not matter that plaintiffs in other cases have sought some relief if they never got it or were wrong

20   to seek it.  In *Bridges*, the district court dismissed by consent a claim for declaratory judgment,

21   rather than ordering dismissal, "because such a claim is properly brought as part of plaintiffs'

22   prayer for relief, not as a separate cause of action."  *Bridges*, 935 F. Supp. at 40.  But the court

23   does not explain its reasoning or the basis for its decision.  In any event, Brazil is bringing

24   separate causes of action for declaratory relief (despite titling them as "claims"), so *Bridges* does

25   not help her.

26

27

28   _____
     [3] Brazil asserts that she is not making a direct claim under California's Mental Health Parity Act.
     Reply 5 n.2.

United States District Court
Northern District of California

**B.  The Act Is Preempted.**

Sovereign immunity bars me from considering this claim.  However, even if it did not deprive me of jurisdiction, Brazil is not entitled to summary judgment because the California Act is preempted by federal law.

"There are three categories of preemption: express, field, and conflict.  Field and conflict preemption are subcategories of implied preemption."  *Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1230 (9th Cir. 2013) (citation omitted).  Express preemption occurs when there is "language in the federal statute that reveals an explicit congressional intent to pre-empt state law."  *Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25, 31 (1996).  Field preemption may be found when there is a "scheme of federal regulation so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it, or where an Act of Congress touches a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on that subject."  *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990) (citation and internal punctuation omitted).  Conflict preemption occurs when it would be "impossible for a private party to comply with both state and federal requirements," *English*, 496 U.S. at 79, or where the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941).  "Congress's intent to preempt state law is implied to the extent that federal law actually conflicts with any state law."  *Whistler Invs., Inc. v. Depository Trust & Clearing Corp.*, 539 F.3d 1159, 1164 (9th Cir. 2008).

FEHBA contains an express preemption provision:  "The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans."  5 U.S.C. § 8902(m)(1).  In 1998, Congress deleted the phrase "to the extent that such law or regulation is inconsistent with such contractual provisions" from the end of the preemption provision such that now "state law—whether consistent or inconsistent with federal plan provisions—is displaced on matters of 'coverage or benefits.'"  *Empire II*, 547 U.S. at 686.  Congress enacted FEHBA because it sought

1   "[t]o ensure uniform coverage and benefits under plans OPM negotiates for federal employees" by

2   preempting "[s]tate laws or regulations which specify types of medical care, providers of care,

3   extent of benefits . . . or other matters relating to health benefits or coverage." *Id.* (quoting H.R.

4   REP. 95-282 at 1, 4-5 (1977)); *see also Carter v. Blue Cross & Blue Shield of Fla., Inc.*, 61 F.

5   Supp. 2d 1237, 1240 (N.D. Fla. 1999).  Through the 1998 amendment, Congress "broaden[ed] the

6   preemption provisions in current law to strengthen the ability of national plans to offer uniform

7   benefits and rates to enrollees regardless of where they may live."  H.R. REP. No. 105-374, at 9

8   (1997).

9           California's Mental Health Parity Act does not apply to Brazil's benefits because FEHBA

10  preempts it.  The California Health and Safety Code provides that "Every health care service plan

11  contract . . . that provides hospital, medical, or surgical coverage shall provide coverage for the

12  diagnosis and medically necessary treatment of severe mental illnesses of a person of any age . . .

13  under the same terms and conditions applied to other medical conditions . . . ."[4] CAL. HEALTH &

14  SAFETY CODE § 1374.72(a).  "[S]evere mental illnesses" includes "[a]norexia nervosa."  CAL.

15  HEALTH & SAFETY CODE § 1374.72(d).  A law "'relates to' [a] plan, in the normal sense of the

16  phrase, if it has a connection with or reference to such a plan."  *Botsford*, 314 F.3d at 394.

17  California's law therefore "relate[s] to the nature, provision, or extent of coverage or benefits."

18  By requiring that "[e]very health care service plan contract" ensure parity between mental health

19  and other treatments to which enrollees are entitled, the California Mental Health Parity Act falls

20  under FEHBA's express preemption provision.  *See Roach v. Mail Handlers Benefit Plan*, 298

21  F.3d 847, 850 (9th Cir. 2002) ("denial of benefit claims are preempted by the FEHBA"); *see also*

22  *Botsford*, 314 F.3d at 395 ("courts have held that FEHBA preempts disputes over a 'denial of

23  benefits' and 'the nature or extent of coverage for benefits'" and "application of state laws in cases

24  involving denials of or disputes over benefits would undermine congressional intent"); *Kight v.*

25  *Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, 34 F. Supp. 2d 334, 339 (E.D. Va. 1999)

26  ("Congress has clearly manifested an intent to preempt state law regarding the terms and benefits

27

28  _____

    [4] The California Insurance Code is nearly identical except that it refers to "disability insurance."
    CAL INS. CODE § 10144.5.

United States District Court
Northern District of California

1    of FEHBA plans.").

2         Brazil argues that the Act is not preempted by FEHBA.  Mot. (Dkt. No. 48) 8.  Brazil notes

3    that in *Harlick*, the Ninth Circuit concluded that "plans within the scope of the [California Mental

4    Health Parity] Act must provide coverage of all 'medically necessary treatment' for 'severe mental

5    illnesses' under the same financial terms as those applied to physical illnesses."  *Harlick*, 686 F.3d

6    at 719.  Brazil also argues that a district court in this circuit reached the same conclusion under the

7    California Insurance Code.  *Burton v. Blue Shield of Calif. Life & Health Ins. Co.*, No. 10-cv-

8    9581, 2012 WL 242841 (C.D. Cal. Jan. 12, 2012).  In *Harlick*, the Ninth Circuit addressed an

9    ERISA case, but preemption was never discussed.  Mot. 8.  Thus, Brazil urges, "the parties and the

10   Court recognized that the Mental Health Parity Statute was not preempted by ERISA."  Mot. 8.

11   Brazil further argues that "[t]he Ninth Circuit has consistently held that, because of the similarity

12   between the preemption provisions in ERISA and FEHBA, courts should look to ERISA

13   preemption cases as persuasive authority when attempting to decide the scope of FEHBA

14   preemption."  Mot. 8. (citing *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941,

15   950 (9th Cir. 2009) ("FEHBA and ERISA are different federal statutes, but their preemption

16   provisions are analytically similar."); *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of

17   U.S.*, 497 F.3d 972, 977 n.2 (9th Cir. 2007); *Botsford*, 314 F.3d at 393-94 ("The new provision

18   closely resembles ERISA's express preemption provision, and precedent interpreting the ERISA

19   provision thus provides authority for cases involving the FEHBA provision.  Therefore, in our

20   discussion of conflict preemption, except when we consider the different goals of the two statutes,

21   we refer to ERISA and FEHBA cases interchangeably."); *E.E.O.C. v. Giumarra Vineyards Corp.*,

22   No. 09-cv-2255, 2010 WL 3220387, at *7 (E.D. Cal. Aug. 13, 2010); *Doctors Med. Ctr. of

23   Modesto, Inc. v. The Guardian Life Ins. Co. of Am.*, No. 08-cv-903, 2009 WL 179681, at *3 n.2

24   (E.D. Cal. Jan. 26, 2009)).  By analogy, Brazil concludes, "the California Mental Health Parity

25   Statute is not preempted by FEHBA."  Mot. 9.

26        Brazil's reliance on *Harlick* and *Burton* is erroneous.  Both cases deal with ERISA, which

27   is not relevant here because Brazil's Plan is governed by FEHBA.  Although she argues that the

28   preemption provisions in ERISA and FEHBA should be treated similarly, ERISA's preemption

United States District Court
Northern District of California

1  provision includes a savings clause that creates an exception to preemption for any state law

2  "which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2). ERISA also does

3  "not apply to any employee benefit plan if . . . such plan is a governmental plan." 29 U.S.C.

4  §§ 1002(32), 1003(b)(1). In contrast, FEHBA's preemption provision has no savings clause and

5  applies to "*any* State or local law . . . which relates to health insurance or plans." 5 U.S.C.

6  § 8902(m)(1) (emphasis added); *see also Botsford*, 314 F.3d at 393 n.11 ("Note that ERISA's

7  preemption provision contains a section that excepts certain kinds of laws from its scope. FEHBA

8  contains no similar provision.") (citation omitted); *Hayes*, 819 F.2d at 926. While some cases

9  have said that the preemption clauses in ERISA and FEHBA are similar, those cases did not deal

10 with the denial of benefits. Any similarity between the acts is irrelevant here. *See Botsford*, 314

11 F.3d at 393 (discussing ERISA and FEHBA interchangeably "except when we consider the

12 different goals of the two statutes").

13        OPM also argues that the California Mental Health Parity Act is preempted by conflict pre-

14 emption. "FEHBA's preemption provision, 5 U.S.C. § 8902(m)(1), ensures that FEHBA benefits

15 are administered uniformly" as Congress intended. *Cedars-Sinai Med. Ctr.*, 497 F.3d at 975; Pub.

16 L. 95-368, 92 Stat. 606 (1978), Opp'n Ex. B. OPM contends that allowing California's Mental

17 Health Parity Act to dictate the limits of national health plans "directly conflicts with Congress'

18 purpose in enacting FEHBA." Opp'n 15. In other words, the state law is preempted because it

19 "poses an obstacle to the accomplishment of Congress's objectives." *Whistler Invs.*, 539 F.3d at

20 1164. Brazil does not respond to OPM's argument about conflict preemption.

21        I agree that California's Mental Health Parity Act is also conflict preempted. In enacting

22 FEHBA, Congress aimed to provide federal employees with "cost-efficient" medical insurance by

23 preventing "disruption [that] would increase administrative costs and, ultimately, increase the cost

24 of health care to federal employees and the Government." *Botsford*, 314 F.3d at 395. As the

25 Ninth Circuit recognized, "The application of different state standards would disrupt the nationally

26 uniform administration of benefits which FEHBA provides. . . . Thus, application of state laws in

27 cases involving denials of or disputes over benefits would undermine congressional intent." *Id.* If

28 every state were able to impose its own idiosyncratic health benefits requirements on federal

13

1   insurance plans, Congress' goal would likely be similarly thwarted by allowing for different plans

2   in different state.  Accordingly, the Ninth Circuit held that where "the [FEHBA] dispute [ ] is, at

3   its root, a dispute over benefits, conflict preemption applies." *Botsford*, 314 F.3d at 396.

4         Brazil argues that the preemption provision may be unconstitutional.  Mot. 10.  Citing the

5   Second Circuit's decision in *Empire HealthChoice Assurance, Inc. v. McVeigh*, 396 F.3d 136, 143

6   (2d Cir. 2005), Brazil quotes then-Judge Sotomayor as noting that it was "highly problematic, and

7   probably unconstitutional," that the preemption provision allows for contract terms, rather than

8   actual federal laws, to preempt state laws.  Accordingly, Brazil argues that "to the extent that OPM

9   contends that its *contract* with Blue Cross Blue Shield preempts the California Mental Health

10  Parity statute, its reading of the statute renders it unconstitutional." Mot. 10.  Rather, there must

11  be a federal law that displaces California law on the issue of parity, which Brazil argues OPM has

12  not identified.  Mot. 10.

13        I am not persuaded that FEHBA's preemption provision is unconstitutional.  The Supreme

14  Court reviewed *Empire II* and explicitly noted that the provision "is unusual in that it renders

15  preemptive contract terms in health insurance plans, not provisions enacted by Congress," but did

16  not find it constitutionally problematic and only instructed "cautious interpretation."  547 U.S. at

17  697.  The Ninth Circuit has also addressed the provision without finding it constitutionally

18  problematic.  *See, e.g.*, *Cedars-Sinai Med. Ctr.*, 497 F.3d at 976; *Botsford*, 314 F.3d at 393;

19  *Roach*, 298 F.3d at 850.  In denying a petition for rehearing in *Empire HealthChoice*, the Second

20  Circuit itself noted that that Judge Sotomayor's discussion was dicta and was not an "essential

21  component" of its ultimate decision.  *Empire HealthChoice*, 402 F.3d at 110.  Given the weight of

22  this authority, I find the preemption provision sound.

23        **C.  Disposition**

24        Because sovereign immunity bars Brazil's claim for declaratory relief and because

25  California's Mental Health Parity Act is expressly preempted and conflict preempted, Brazil's

26  motion for summary judgment on the second cause of action is DENIED and OPM's motion for

27  summary judgment is GRANTED.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

**V.    THIRD CAUSE OF ACTION FOR DECLARATORY RELIEF THAT THE PLAN VIOLATES FEDERAL MENTAL HEALTH PARITY AND ADDICTION EQUITY ACT**

The federal Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 requires that a plan that "provides both medical and surgical benefits and mental health or substance use disorder benefits" ensure that "the treatment limitations applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan (or coverage) and there are no separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits." 42 U.S.C. § 300gg-26(a)(3)(A)(ii). A treatment limitation "includes limits on the frequency of treatment, number of visits, days of coverage, or other similar limits on the scope or duration of treatment." 42 U.S.C. § 300gg-26(a)(3)(B)(iii).

In a November 10, 2008, letter from OPM to all FEHB Program Carriers, OPM stated that beginning January 1, 2010, FEHBA plans would be required to "apply the same financial requirements (coinsurance, co-payments, deductibles and out-of-pocket maximums) and treatment limitations (visit and day limits) to both out-of-network medical and surgical benefits and out-of-network mental health and substance use disorder benefits." Letter from Ins. Servs. Program, U.S. Office of Pers. Mgmt. to All Carriers (Nov. 10, 2008) (available at FAC Ex. G, Dkt. No. 41-5 at 17-18). A similar letter sent on April 20, 2009, also stated, "If a plan provides both medical and surgical benefits and mental health or substance abuse benefits, the plan must also provide mental health or substance abuse benefits for out-of-network providers at a parity level." Letter from Ins. Servs. Program, U.S. Office of Pers. Mgmt. to All Carriers (Apr. 20, 2009) (available at FAC Ex. H, Dkt. No. 41-5 at 23). "Plans must cover all categories of mental health . . . ." *Id.* at 24.

On February 2, 2010, the U.S. Department of the Treasury, U.S. Department of Labor, U.S. Department of Labor, and U.S. Department of Health and Human Services published Interim Final Rules Under the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 and a request for comments. 75 Fed. Reg. 5410-01. The Interim Rules state,

United States District Court
Northern District of California

1    "The Departments also recognize that MHPAEA prohibits plans and issuers from imposing

2    treatment limitations on mental health and substance use disorder benefits that are more restrictive

3    than those applied to medical/surgical benefits." *Id.* at 5416.  It continues, "Under these

4    regulations, if a plan provides any benefits for a mental health condition or substance use disorder,

5    benefits must be provided for that condition or disorder in each classification for which any

6    medical/surgical benefits are provided." *Id.* at 5413.

7         Brazil asserts that "OPM agreed that all insurance contracts would comply with MHPAEA,

8    and that the Interim Rules required that [her] plan provide coverage for residential treatment."

9    Reply 2.  She then notes that "On November 13, 2013, the Departments of Treasury, Labor and

10   Health and Human Services issued the Final Rules," which require plans that cover inpatient

11   medical and surgical benefits to also cover residential treatment facility or center care for mental

12   health or substance use disorders.  Reply 2-3 (citing 78 Fed. Reg. 68240-47, -73 (Nov. 13, 2013)).

13   "The Final Rules confirm, therefore, that the 'unconditional exclusion' of treatment of a mental

14   illness is not allowed, when other conditions are being treatment outside of a hospital," and the

15   parties do not dispute that Brazil's Plan excludes such treatment.  Reply 4.  Brazil points out that

16   "the Plan provides skilled nursing care as a classification of medical/surgical benefits," but "it

17   does *not* provide residential treatment as a classification of mental health benefits."  Mot. 15.

18   Thus, she contends, BSC is violating the parity requirements.

19        OPM argues that "The Court lacks jurisdiction over the Mental Health Parity and

20   Addiction Equity Act claims because this Act did not amend FEHBA and does not apply to the

21   FEHB Program."  Opp'n 8.  It is correct.  Although the Act amended three statutes, FEHBA was

22   not one of them.[5]  Opp'n 8 (citing Pub L. No. 110-343, 22 Stat. 3765 (2008)).  All three statutes

23   already exclude government plans from their coverage.  *See* 29 U.S.C. §§ 1003(b)(1), 1002(32);

24   42 U.S.C. § 300gg–21(a)(1); 26 U.S.C. § 9831(a)(1); Tr. 12:17-21.

25        The Act requires certain plans to ensure that mental health and substance use disorder

26   benefits are no more restrictive than those that apply to medical and surgical benefits.  It does not

27

28   [5] The three statutes are ERISA, 29 U.S.C. § 1185a, the Internal Revenue Code, 26 U.S.C. § 9812, and the Public Health Service Act, 42 U.S.C. 300gg-26.

1  apply to federal employee health plans and is not administered by OPM.  While OPM voluntarily

2  decided to require plans under FEHBA to follow the Act, doing so does not augment OPM's

3  liability because an agency cannot waive sovereign immunity and thus alter federal court

4  jurisdiction.  *See Carlyle Towers Condo. Ass'n v. FDIC*, 170 F.3d 301, 310 (2d. Cir. 1999).

5  Rather, only Congress can waive immunity, and it must do so "unequivocally" or do so through

6  "clear congressional intent."  *Cooper*, 132 S. Ct. at 1448; *Irwin v. Dep't of Veterans Affairs*, 498

7  U.S. 89, 95 (1990); *United States v. Mitchell*, 445 U.S. 535, 538 (1980)).[6]

8      As a result, sovereign immunity bars this cause of action.  Brazil does not point to any

9  explicit waiver of sovereign immunity by Congress allowing OPM to be sued for purported

10  violations of the federal Mental Health Parity and Addiction Equity Act or any relevant rules.  "A

11  waiver of the Federal Government's sovereign immunity must be unequivocally expressed in

12  statutory text . . . ."  *Lane v. Pena*, 518 U.S. 187, 192 (1996).  Even if OPM has decided to extend

13  the scope of certain benefits, that extension does not amount to a waiver of sovereign immunity.

14  And the Final Rules cited by Brazil could not apply to her because they are not effective until July

15  1, 2014, at the earliest.  78 Fed. Reg. 68,240, 68252-53 (Nov. 13, 2013) ("These final regulations

16  apply to group health plans and health insurance issuers offering group health insurance coverage

17  on the first day of the first plan year beginning on or after July 1, 2014.").  The benefits claimed

18  here are from 2011.  For all of these reasons, I lack jurisdiction to adjudicate this claim.

United States District Court
Northern District of California

25  [6] OPM also argues that even if the Act did apply to federal employee health plans, Brazil's Plan "excludes coverage for residential treatment centers for both physical and mental illnesses." Surreply 5 (citing OPM0123-24, -69).  Similarly, Brazil's argument about skilled-nursing
26  coverage does not matter because it applies to Medicare Part A enrollees only and Brazil is not a Medicare Part A enrollee.  Surreply 6 (citing OPM0128); Tr. 13:4-14:2.  "In addition, Plaintiff's
27  argument that residential treatment is required under the Mental Health Parity and Addiction Equity Act is incorrect" because the Act "does not impose an affirmative obligation to provide
28  mental health benefits."  Surreply 5.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**CONCLUSION**

For all the reasons above, I GRANT OPM's motion for summary judgment and DENY

Brazil's motion for summary judgment.

   **IT IS SO ORDERED.**

Dated:  March 28, 2014



_____

WILLIAM H. ORRICK
United States District Judge

18